Appeal No.: 22-50149

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

BRITTANY HUDSON,

Plaintiff-Appellant,

v.

LINCARE INC.,

Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

CASE NO.: 1:20-cv-928

U.S. DISTRICT JUDGE, ROBERT PITMAN PRESIDING

## APPELLEE'S RESPONSE TO INITIAL BRIEF OF THE APPELLANT

RACHEL Z. ULLRICH                DAVID M. KALTEUX
Texas Bar No. 24003234      Florida Bar No. 118746 (*pro hac vice*)
Email: rullrich@fordharrison.com      Email: dkalteux@fordharrison.com

FORD & HARRISON LLP
1601 Elm Street, Suite 4450
Dallas, Texas  75201
(214) 256-4700  Telephone
*Attorneys for Appellee*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fed. R. App. P. 28(a)(1) and 29(b) and Local Rule 28.2 of the Fifth Circuit Court of Appeals, the undersigned counsel of record for Lincare Inc. ("Lincare" or "Appellee"), certified that the following listed persons, association of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent or subsidiary corporations, or other legal entities are financially interested in the outcome of this litigation:

1.   Judge Robert Pitman, United States District Judge for the Western District of Texas, Austin Division;

2.   Brittany Hudson, Appellant;

3.   Ellwanger Law, L.L.L.P., Appellant's counsel;

4.   Holt M. Lackey, Appellant's counsel;

5.   Jennifer Jones Despins, Appellant's counsel;

6.   Jay D. Ellwanger, Appellant's counsel;

7.   Lincare Inc., Appellee;

8.   Lincare Holdings Inc.;

9.   Linde plc;

10.   Ford & Harrison LLP, Lincare's counsel;

11.   Rachel Z. Ullrich, Lincare's counsel; and

12.    David M. Kalteux, Lincare's counsel.

/s/ *David M. Kalteux*
Rachel Z. Ullrich
Texas Bar No. 24003234
rullrich@fordharrison.com

David M. Kalteux (*pro hac vice*)
Florida Bar No. 118746
dkalteux@fordharrison.com

**FORDHARRISON LLP**
1601 Elm Street, Suite 4450
Dallas, Texas  75201
Telephone:  (214) 256-4700
Facsimile:  (214) 256-4701

**ATTORNEYS FOR DEFENDANT
LINCARE INC.**

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Lincare believes oral argument is unnecessary in this case, as it does not involve unique issues of law or even unusual allegations of fact. The District Court properly granted summary judgment on Appellant Brittany Hudson's ("Hudson") causes of action against Lincare based upon clearly established Fifth Circuit precedent. The District Court's opinion is clear and well-reasoned, and Hudson has had a fair and full opportunity to address all issues via written briefing. Thus, oral argument will not assist the Court in deciding the issues in this case. To the extent the Court nonetheless decides oral argument will assist the Court in deciding the issues in this case, Lincare respectfully requests oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS .......................................................................................... iv

TABLE OF AUTHORITIES .................................................................................... v

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................ 1

STATEMENT OF THE CASE ................................................................................. 1

   A. Procedural History ......................................................................................... 1
   B. Statement of Facts .......................................................................................... 2

SUMMARY OF THE ARGUMENT ...................................................................... 12

LEGAL ARGUMENT ............................................................................................ 13

   I. Standard of Review ...................................................................................... 13

   II. The District Court Properly Granted Summary Judgment on Hudson's
      Hostile Work Environment Claims .............................................................. 13

      A. Hudson Cannot Prove She Was Subject to Sufficiently Severe or Pervasive
         Conduct ..................................................................................................... 14

      B. . Lincare Took Prompt Remedial Action That Ended the Alleged Harassing
         Conduct ..................................................................................................... 24

   III. The District Court Properly Granted Summary Judgment on Hudson's
       Retaliation Claims ....................................................................................... 30

CONCLUSION ....................................................................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boykins v. Entergy Operations, Inc.*,
   180 F.3d 262 (5th Cir. 1999) ........................................................................ 32

*Brandon v. Sage Corp.*,
   808 F.3d 266 (5th Cir. 2015) ........................................................................ 30

*Bruno-Ponthier v. United Parcel Serv.*,
   285 Fed. App'x. 167 (5th Cir. 2008) ............................................................. 34

*Burlington Industries, Inc. v. Ellerth*,
   524 U.S. 742 (1998) ....................................................................................... 24

*Burrell v. Crown Cent. Petroleum, Inc.*,
   121 F. Supp. 2d 1076 (E.D. Tex. 2000) ....................................................... 16

*Cabral v. Brennan*,
   853 F.3d 763 (5th Cir. 2017) ........................................................................ 30

*Carmon v. Lubrizol Corp.*,
   17 F.3d 791 (5th Cir. 1994) (per curiam ...................................................... 25

*Chaney v. New Orleans Pub. Facility Mgmt., Inc.*,
   179 F.3d 164 (5th Cir. 1999) ........................................................................ 34

*Cinel v. Connick*,
   15 F.3d 1338 (5th Cir. 1994) .................................................................. 13, 30

*Collier v. Dallas County Hosp. Dist.*,
   827 Fed. App'x. 373 (5th Cir. 2020) ............................................................. 20

*Dabney v. Christmas Tree Shops*,
   958 F. Supp. 2d 439 (S.D.N.Y. 2013) ........................................................... 23

*Dailey v. Shintech, Inc.*,
   629 F. App'x 638 (5th Cir. 2015) ................................................................. 20

v

*Davis v. Indep. Contract Drilling, Inc.*, 4:16-CV-00252, 2019 WL 1200808, at *12
  (S.D. Tex. Mar. 14, 2019)

*Davis v. Maggio*,
  706 F.2d 568 (5th Cir. 1983) ................................................................. 13

*DeHart v. Baker Hughes Oilfield Operations, Inc.*,
  214 Fed. App'x. 437 (5th Cir. 2007) ..................................................... 32

*Douglass v. United Services Auto. Ass'n*,
  79 F.3d 1415 (5th Cir. 1996) ................................................................. 33

*Faragher v. City of Boca Raton*,
  524 U.S. 775 (1998) ...................................................................... 14, 15

*Flowers v. S. Reg'l Physician Servs. Inc.*,
  247 F.3d 229 (5th Cir. 2001) ................................................................. 14

*Frazier v. Sabine River Auth.*,
  509 F. App'x 370 (5th Cir. 2013) ......................................................... 19

*Gowesky v. Singing River Hosp. Sys.*,
  321 F.3d 503 (5th Cir. 2003) ................................................................. 14

*Grant v. UOP, Inc.*,
  972 F. Supp. 1042 (W.D. La. 1996) ................................................ 15, 19

*Harris v. Forklift Sys., Inc.*,
  510 U.S. 17 (1993) ................................................................................ 15

*Harvill v. Westward Communications, LLC*,
  433 F.3d 428 (5th Cir. 2005) ................................................................. 15

*Hernandez v. Yellow Transp., Inc.*,
  670 F.3d 644 (5th Cir. 2012) .......................................................... 23, 31

*Hockman v. Westward Commc'ns, LLC*,
  407 F.3d 317 (5th Cir. 2004) ................................................................. 23

*Houston v. EBI Cos.*,
   53 F.3d 1281 (5th Cir. 1995).......................................................... 26, 27

*Howard v. United Parcel Serv., Inc.*,
   447 F. App'x 626 (5th Cir. 2011) ......................................................... 19

*In re Grandote Country Club Co. Ltd.*,
   252 F.3d 1146 (10th Cir. 2001)............................................................ 16

*International Shortstop, Inc. v. Rally's, Inc.*,
   939 F.2d 1257 (5th Cir. 1991).............................................................. 13

*Johnson v. TCB Const. Co., Inc.*,
   334 Fed. App'x. 666 (5th Cir. 2009)................................... 15, 16, 17, 19

*Johnson v. UAH Prop. Mgt., Ltd.*,
   428 Fed. App'x. 311 (5th Cir. 2011).................................................... 18

*Knight v. City of New*,
   1991 WL 126387, *Orleans*, No. 89 (E.D. La. July 1, 1991)................................ 25

*Lauderdale v. Texas Dept. of Crim. J., Institutional Div.*,
   512 F.3d 157 (5th Cir. 2007)............................................................... 24

*LeMaire v. Louisiana Dept. of Transp. and Dev.*,
   480 F.3d 383 (5th Cir. 2007).............................................................. 32

*Martco Ltd. P'ship v. Wellons, Inc.*,
   588 F.3d 864 (5th Cir. 2009)......................................................... 24, 32

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ......................................................................... 13

*Moore v. United Parcel Serv., Inc.*,
   150 Fed. App'x. 315 (5th Cir. 2005).................................................... 20

*Moser v. Indiana Dept. of Corrections*,
   406 F.3d 895 (7th Cir. 2005).............................................................. 15

*Mosley v. Marion County*,
    111 F. App'x 726 (5th Cir. 2004) ........................................................ 20

*Nkemakolam v. Northside Indep. Sch. Dist.*, 5:15-CV-99-DAE,
    2015 WL 3651546 (W.D. Tex. June 11, 2015) ................................... 30

*Payne v. Pauley*,
    337 F.3d 767 (7th Cir. 2003)........................................................ 16, 27

*Peterson v. Linear Controls, Inc.*,
    757 Fed. App'x. 370 (5th Cir. 2019) ................................................... 17

*Pickens v. Chell Tech. Ventures, Inc.*,
    118 F. App'x 842 (5th Cir. 2004) ...................................................... 20

*Ramsey v. Henderson*,
    286 F.3d 264 (5th Cir. 2002).................................................... 14, 24, 33

*Reed v. Neopost USA, Inc.*,
    701 F.3d 434 (5th Cir. 2012)............................................................... 13

*Reddy v. Super. Glob. Sols., Inc.*, 4:11-CV-845,
    2013 WL 3215740 (E.D. Tex. June 24, 2013)................................... 24

*S.W.S. Erectors, Inc. v. Infax, Inc.*,
    72 F.3d 489 (5th Cir. 1996)................................................................ 18

*Seigler v. Wal-Mart Stores Texas, L.L.C.*,
    30 F.4th 472 (5th Cir. 2022) .............................................................. 18

*Sharp v. City of Houston*,
    164 F.3d 923 (5th Cir. 1999).............................................................. 22

*Sims v. Equilon Pipeline, Inc.*, CIV.A. 01-CA-0875,
    2004 WL 557314 (W.D. Tex. Feb. 3, 2004)...................................... 29

*Skidmore v. Precision Printing and Pkg., Inc.*,
    188 F.3d 606 (5th Cir. 1999).............................................................. 27

*Standley v. Rogers*,
    680 Fed. App'x. 326 (5th Cir. 2017*)*................................................................. 33

*Swenson v. Potter*,
    271 F.3d 1184 (9th Cir. 2001).................................................................. 28

*Thurman v. Sears, Roebuck & Co.*,
    952 F.2d 128 (5th Cir. 1992)................................................................. 18

*Turner v. Novartis Pharma. Corp.*,
    442 F. App'x 139 (5th Cir. 2011).......................................................... 32

*Vaughn v. Pool Offshore Co.*,
    683 F.2d 922 (5th Cir. 1982)................................................................. 20

*Vital v. Natl. Oilwell Varco*,
    2014 WL 4983485 (S.D. Tex. Sept. 30, 2014) ............................ 14, 16

*Wantou v. Wal-Mart Stores Texas, LLC*,
    23 F.4th 422 (5th Cir. 2022) ................................................................. 29

*Watts v. Kroger Co.*,
    170 F.3d 505 (5th Cir. 1999)................................................................. 21

*White v. Govt. Employees Ins. Co.*,
    457 Fed. App'x. 374 (5th Cir. 2012)..................................................... 17

*Williams-Boldware v. Denton County, Tex.*,
    741 F.3d 635 (5th Cir. 2014)........................................................... 24, 25

*Woods v. Cantrell*,
    29 F.4th 284 (5th Cir. 2022) ....................................................... 20, 21, 22

*Woods v. Delta Bev. Group, Inc.*,
    274 F.3d 295 (5th Cir. 2001)....................................................... 26, 28, 29

**Statutes**

42 U.S.C. § 1981 ........................................................................................ 1

42 U.S.C. §§ 2000e ................................................................. 1

Tex. Lab. Code §§ 22.001 ...................................................... 1

**Rules**

Fed. R. App. P. 28 ................................................................. 1

Fed. R. App. P. 32 ............................................................... 36

Fed. R. Civ. P. 56 ............................................................... 13

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

<u>Issue one</u>: Whether the District Court properly granted summary judgment on Hudson's claims for hostile work environment based on race under Title VII, Section 1981, and the Texas Labor Code.

<u>Issue two</u>: Whether the District Court properly granted summary judgment on Hudson's claims for retaliation under Title VII, Section 1981, and the Texas Labor Code.

In her appeal, Hudson has not challenged the District Court's ruling granting summary judgment on her claims for disparate treatment (under Title VII, Section 1981, and the Texas Labor Code) and breach of contract (under Texas common law). Therefore, the Court need not review and should affirm summary judgment on those claims.

**STATEMENT OF THE CASE**

**A.     Procedural History**

On September 9, 2020, Hudson filed a ten-count Complaint against Lincare alleging (1) race discrimination; (2) hostile work environment based on race; and (3) retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., as amended ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 22.001 ("TLC"), and a claim for breach of contract under Texas common law. (ROA.7.) On October

14, 2021, Lincare moved for summary judgment on Hudson's claims ("Motion for Summary Judgment"). (ROA.205.) On October 28, 2021, Hudson filed her response in opposition to Lincare's Motion for Summary Judgment ("Opposition"). (ROA.509.) On November 4, 2021, Lincare filed its reply to Hudson's Opposition. (ROA.948.) On February 2, 2022, the District Court issued an order granting Lincare's Motion for Summary Judgment and dismissing Hudson's claims with prejudice ("Order"). (ROA.1109.)

## B.     Statement of Facts

**Hudson Begins Employment with Lincare.** Hudson began her employment with Lincare in April 2015 in Astoria, Oregon. (ROA.238.) After about one year in Astoria, Hudson transferred to Portland, Oregon, and then to New Orleans, Louisiana. (*Id.*) Hudson worked as a Sales Representative ("Sales Rep"). (*Id.*) Hudson sold respiratory therapy equipment, oxygen, supplies, and services to healthcare providers. (ROA.239.) Hudson made sales calls, established and maintained relationships with referral sources in the medical community, completed deliveries and paperwork to ensure the sale can be billed, and tracked her sales. (ROA.239; ROA.289.)

**Lincare's Commitment to Equal Employment Opportunity.** Lincare has in place anti-discrimination, anti-harassment, and anti-retaliation policies which prohibit discrimination and harassment. (ROA.382) Lincare has a Reporting

Procedure that provides a number of reporting avenues for employees. (ROA.357-58, ROA.382.) Lincare's HR Department will quickly and thoroughly investigate any such complaints. (ROA.361.) Hudson acknowledged receiving and reviewing these policies and procedures. (ROA.241, ROA.287.)

**Hudson Issued Disciplinary Action for Failing to Track and Make Sales.** On July 13, 2017, Hudson was issued a documented verbal warning for failing to track her sales. (ROA.299.) On April 23, 2018, Hudson was issued a documented verbal warning for failing to achieve the minimum performance standards. (ROA.250; ROA.267-68; ROA.299.)

**Hudson Transfers to Austin.** In December 2018, Hudson contacted Lincare's Austin, Texas center (the "Austin Center") about job openings.[1] (ROA.247.) The Austin Center's Manager, Casey Greenway ("Greenway"), interviewed and approved Hudson's transfer.[2] Hudson began working there as a Sales Rep on December 10, 2018. (ROA.471.)

**The Austin Center.** The Austin Center had three Customer Service Representatives ("CSR"),[3] Patricia Ruiz ("Ruiz"), Anicia Torres ("Torres"), and

---

[1] Hudson wanted to move to Austin to be closer to her grandmother. (ROA.246.)

[2] When an employee requests a transfer, the employee is required to go through an interview process with the new center similar to that of a new employee to make sure it is a good fit. (ROA.471.)

[3] The CSRs answer phones, take patient orders, mail out and set up orders, obtain paperwork, and make sure orders and can be billed. (ROA.313.) The CSRs are lower-level employees who do not have any supervisory authority. (ROA.471.)

Virginia Balli ("Balli"), and two Sales Reps, Hudson and Adele Boyd ("Boyd").[4] (ROA.248; ROA.471.) All reported to Greenway. (ROA.247-48.) The CSRs sat in the front of the office; the Sales Reps had an area they shared in the back. (ROA.259.) The offices were separated by a wall. (*Id.*)

**Hudson Rarely Worked in the Office.** Sales Reps performed the majority of their work out of the office on sales calls to doctor's offices, clinics, and other referral sources[5] while CSRs spent all of their time in the office. (ROA.333.) Hudson did not work at the Austin Center often.[6] (ROA.248; ROA.316.) Hudson worked outside of the office on Tuesday, Wednesday, Thursday, and Friday. (ROA.250.) Hudson went to the office on Monday mornings to attend the weekly team meeting day. (*Id.*) On occasion, Hudson would go into the office on other days for a "lunch and learn" or to submit paperwork, but those visits would be quick. (*Id.*)

**The June 20 Meeting.** On June 20, 2019, Greenway held a meeting between Boyd, Ruiz, Torres,[7] and Hudson to address issues between the CSRs and Sales Reps (the "June 20 Meeting"). (ROA.262.) The discord stemmed from Boyd sending an e-mail to the Regional Manager, Mike Potter, which the CSRs disagreed with.

---

[4] The office also had a respiratory therapist, Scott Gove ("Gove"), and several drivers. (ROA.248.)

[5] Hudson was expected to make 10-12 sales calls per day. (ROA.249-250.)

[6] Ruiz testified that Hudson was "hardly ever in the office." (ROA.321.)

[7] Ruiz is white, Torres is Hispanic, Boyd is white, and Greenway is white. (ROA.248.)

(ROA.304; ROA.362.) During the meeting, Ruiz called Boyd a "bitch." (ROA.263.) Torres stated that the Sales Reps were not doing their job and were "failures." (ROA.263, ROA.304.) Greenway immediately told everyone to calm down and not use inappropriate language. (ROA.263-64; ROA.329.) Hudson then confronted Torres and told her to stop using the N-word[8] in the office. (ROA.264.) Torres asked Hudson what she was talking about. (*Id.*) Hudson responded that she heard Torres use the N-word in the office a few times. (*Id.*) Torres responded she would not say it when Hudson was around to which Hudson responded she should not use it period. (ROA.304.) Torres then called Hudson a "bitch" and explained that she would use the N-word whenever she wanted to, that it was a free country, that Hudson could

---

[8] The "N-word" refers to "nigger" or "nigga," as Hudson does not recall which version of the word she alleges she heard Torres use. (ROA.258.)

sue her if she wanted, and walked out of the meeting.[9] (ROA.264-65; ROA.304.) Greenway immediately contacted HR to report what occurred.[10] (ROA.358.)

**Torres Apologizes to Hudson.** Later, Torres sent Hudson a text message apologizing for her comments in the June 20 meeting. (ROA.269; ROA.345.) Hudson did not respond. (ROA.269.)

**Hudson Reports Incident to HR.** Hudson utilized Lincare's Reporting Procedure and contacted HR. (ROA.265; ROA.268.) HR Business Partner, Juanita Lichtenberg ("Lichtenberg"),[11] called Hudson back and asked for a written statement of the event and any supporting documentation. (ROA.265; ROA.359.) On June 21, 2019, Hudson sent her statement. (ROA.268; ROA.304.)

---

[9] Hudson's recollection of Torres' comments at the June 20 meeting has changed several times. This was the version from Hudson's statement to HR, which Hudson testified was accurate and written the following day after the meeting. (ROA.268.). It does not state that Torres actually said "n****r" in the meeting. In Hudson's Charge of Discrimination, Hudson stated that Torres responded "Bitch, Imma say n***** when I want. Imma say n***** if I wanna say n*****. Sue me bitch," and that it was okay for her to use the N-word because she had black friends. (ROA.266; ROA.281.) In deposition, Hudson changed her story further stating Torres called her a "n****r bitch" in the meeting; however, Hudson never mentioned this important detail in her initial statement to HR (sent one day after the meeting), charge (filed approximately one month after the meeting), or complaint. *See* (ROA.264-65, ROA.281.) Other witnesses testified that Torres did not actually say the N-word in the meeting at all or call Hudson the N-word. (ROA.322; ROA.330; ROA.336; ROA.345.)

[10] Greenway has been trained by Lincare on how to handle complaints of harassment and discrimination, including immediately contacting HR if there is a complaint. (ROA.327-28).

[11] Lichtenberg, a 21-year employee, was an experienced HR Business Partner. (ROA.354-55.)

**Lichtenberg Immediately Launches Investigation.** Lichtenberg began an investigation into the incident and Hudson's allegations that Torres used the N-word. (ROA.359.) Lichtenberg interviewed and/or took statements from Hudson, Ruiz, Torres, Boyd, and Greenway.[12] (ROA.365-66; ROA.369; ROA.441.) Hudson told Lichtenberg that she overheard Torres use the word twice when on the phone and twice in the meeting. (ROA.367-68.) Boyd reported she heard Torres say it once in the office. (ROA.366; ROA.441.) Torres admitted to Lichtenberg that she said "my n***a you're the best" when talking with a coworker in a friendly/slang manner, but only said the word twice, and that her comments were not directed towards Hudson. (*Id.*)

**Lincare Takes Prompt Remedial Action.** On June 25, 2019, **five days after the meeting**, final written warnings were issued to both Ruiz and Torres.[13] (ROA.319-20; ROA.359.) The final warnings encompassed the events of the June 20 meeting and all inappropriate language used by either employee before then. (ROA.371.) They stated future incidents of discriminatory comments or any retaliatory conduct "will result in [ ] immediate termination." (ROA.320; ROA.379;

---

[12] Lichtenberg maintained an investigation record. (ROA.441.)

[13] Lichtenberg recommended a final written warning rather than a termination because this was the first offense for both employees, her investigation revealed the use of inappropriate language was more of an isolated incident and while very inappropriate, she determined the used of the N-word was not directed towards Hudson and only overheard when talking to someone else on the phone. (ROA.360.)

ROA.467.) Torres was told to remove the N-word from her vocabulary. (ROA.441.) Per company policy, Lichtenberg did not inform Hudson that disciplinary action was issued but told her the matter had been addressed and to contact her if any harassing or retaliatory conduct occurred. (ROA.359.) Hudson was not issued disciplinary action for her conduct in the meeting. (ROA.266.)

**Lincare's Remedial Action Successful**. Lincare has not received a complaint that Ruiz or Torres have used inappropriate or discriminatory language after receiving the final warnings. (ROA.359.) Greenway has not observed Ruiz or Torres using discriminatory or offensive language since the final written warnings. (ROA.338.) Hudson did not hear Torres nor any other employee use the N-word after her report to HR on June 20, 2019, or report any other harassment that occurred after the final warnings. (ROA.269.) After the final warnings, the CSRs and Sales Reps focused on doing their jobs and did not socialize with one another.[14] (ROA.334.)

**Hudson Reports "Aunt Jemima" Comment.** On July 5, 2019, Hudson reported to Lichtenberg that Gove told her Ruiz referred to her as "Aunt Jemima." (ROA.273; ROA.307.) On July 8, 2019, Lichtenberg responded she would look into the issue. (ROA.274; ROA.307.) Lichtenberg conducted an investigation which

---

[14] Hudson limited her conversations with Ruiz or Torres after the June 20 meeting other than to discuss patient orders. (ROA.270.) Hudson continued working amicably with the other CSR who was not present during the June 20 meeting. (*Id.*)

determined that Ruiz made a comment that Hudson looked like "Aunt Jemima" because the outfit she was wearing that day resembled the outfit the Aunt Jemima character wore, and did not mean it in a derogatory way. (ROA.318-19; ROA.331.) Hudson was not in the office when Ruiz made this comment. (ROA.319.) Greenway was present and immediately told Ruiz she should not compare Hudson's outfit to Aunt Jemima. (*Id.*) Lichtenberg did not recommend further discipline because she could not determine when the comment was made.[15] (ROA.373-74; ROA.441.)

**Hudson Searches For and Accepts New Job.** While working for Lincare, Hudson applied and interviewed for an open position with Medici.[16] (ROA.272.) On July 18, 2019, Hudson received an offer from Medici to be an inside sales representative. (ROA.240; ROA.284.) On July 23, 2019, she accepted the job and signed the offer letter with a start date of August 12, 2019.[17] (ROA.272; ROA.284.)

**Hudson's Performance Issues.** Hudson was not meeting job expectations and sales goals at the Austin Center. (ROA.338.) Doctors' offices often contacted Greenway stating that Hudson was not making her expected sales calls. (ROA.339.) Hudson had not tracked any of her sales since early July. (ROA.378; ROA.441;

---

[15] There is some dispute as to when the comment was made. This comment occurred back in March or April of 2019 before Ruiz received the final warning (ROA.338), but Gove said he thought it occurred June 24 or 25, 2019. (ROA.441.)

[16] Hudson does not remember why she started looking for a new job. (ROA.272.)

[17] Hudson applied for a position and interviewed with a real estate company while working for Lincare. (ROA.272.) Hudson applied for and was offered a job by PeopleFund in July 2019. (ROA.277.)

ROA.471; ROA.504.) Greenway informally counseled Hudson on these issues. (ROA.339.) Potter spoke to Hudson about her failure to track sales on several occasions lastly on August 8 and let her know she would be receiving formal disciplinary action soon if she had not completed her sales entries by then. (ROA.441; ROA.504.)

**Hudson Resigns.** On August 9, 2019, Hudson resigned without notice. (ROA.272-73; ROA.306.) Her resignation e-mail stated that despite her complaints to HR,[18] the harassment and hostile work environment have made it impossible for her to work there and perform her job duties. (ROA.306.) Lichtenberg called Hudson immediately. (ROA.274.) Hudson did not think Lichtenberg could fix the situation and stated her resignation was final. (*Id.*) The following Monday, August 12, Hudson started at Medici, as planned all along. (ROA.241; ROA.274.)

**Hudson's Alleged Hostile Treatment:**

<u>Patricia Ruiz</u>. Hudson alleges Boyd told her that Ruiz made comments that Hudson was "loud and black" and "ghetto." (ROA.260.) Hudson did not hear these comments firsthand nor was present when they were made. (ROA.276.) Boyd

---

[18] In the resignation e-mail, Hudson states she reported racial discrimination and harassment on June 21, July 2, and July 5, 2019. (ROA.306.) However, Hudson testified that she only remembers making the two reports to HR – the June 20 meeting and the Aunt Jemima comment on July 5. (ROA.274.)

reported these comments to Lichtenberg and they were addressed in the final warning. (ROA.371; ROA.441.)

Torres. Hudson alleges Torres used the N-word regularly before the June 20 Meeting but does not know how many times.[19] (ROA.259.) Torres' use of the N-word was addressed in the final warnings. (ROA.359.) Hudson testified she did not hear Torres use the N-word after her report to HR on June 20, 2019. (ROA.269.) Hudson did not hear anyone else use the N-word. (ROA.259.)

Avera. Tina Avera was Hudson's Area Manager when she first transferred to the Austin Center.[20] (ROA.255.) Avera and Hudson interacted a couple of times per month. (*Id.*) In January 2019, Avera met with Boyd and Hudson to discuss sales goals. (ROA.256.) Avera provided instruction on how the Sales Reps should dress and told Hudson that she needed to do something with her hair and commented that she could say that to Hudson because she had a black daughter-in-law. (*Id.*) Hudson alleges Avera was aggressive on calls with Hudson and Greenway and threatened to fire Hudson if she did not do what Avera asked. (ROA.258.) Avera did not call Hudson names or use racial slurs. (*Id.*) Hudson never reported Avera's comments or other conduct. (ROA.257.)

---

[19] Hudson alleges Torres used the N-word while on telephone calls referring to others. (ROA.259; ROA.281.) Hudson alleges Torres used the N-word in the June 20, 2019 meeting. (ROA.258.)
[20] Mike Potter eventually took over responsibility for the center in April. (ROA.255-56; ROA.504.)

**Hudson's Alleged Retaliatory Conduct.** Hudson alleges that Ruiz and Torres refused to work with her and deleted her orders because she reported the June 20 meeting incident to HR. (ROA.267.) Hudson never reported this alleged retaliatory conduct to HR or anyone else at Lincare despite Lichtenberg informing Hudson during the investigation to contact her immediately if any additional harassment or retaliatory conduct occurred. (ROA.267; ROA.270; ROA.362.) Lichtenberg did not inform Ruiz or Torres that Hudson lodged the complaints against them. (ROA.362.) The final warning instructed Ruiz and Torres not to retaliate against any individual who reported the discrimination or harassment when she delivered the final written warning on June 25, 2019. (*Id.*)

## SUMMARY OF THE ARGUMENT

The District Court conducted a complete and careful analysis of the record and the arguments of the parties. It properly found, as fully supported and as uncontroverted in the records that Hudson could not establish a *prima facie* case of hostile work environment or retaliation, which were the only two claims raised by Hudson in her appeal. Hudson's hostile work environment claims fail because the alleged harassing conduct was not sufficiently severe or pervasive to materially affect the terms and conditions of her employment, and even if it was, Lincare took prompt remedial action after learning of the alleged harassing conduct. Hudson's retaliation claims fail because Hudson was not subject to an adverse employment

action, and even if she was, cannot prove her protected conduct was the "but for" cause of the alleged adverse employment act.

## LEGAL ARGUMENT

### I.     Standard of Review

The standard of review is *de novo*. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992). The reviewing court may "affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012). "Summary judgment is proper when the pleadings and evidence on file show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II.     The District Court Properly Granted Summary Judgment on Hudson's Hostile Work Environment Claims[21]

---

[21] Hudson has abandoned her disparate treatment and breach of contract claims since she did not raise or argue those claims in her initial brief. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) (holding an appellant abandons all issues not raised and argued in its initial brief on appeal); *Davis v. Maggio*, 706 F.2d 568, 571 (5th Cir. 1983) (commenting that "[c]laims not pressed on appeal are deemed abandoned").

To prove her *prima facie* case of hostile work environment[22], Hudson must establish (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her race; (4) the harassment affected a term, condition, or privilege of employment; and if her alleged harasser was a coworker rather than a supervisor, (5) that Lincare knew or should have known about the harassment and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Hudson's claims fail because (1) she was not subjected to "sufficiently severe or pervasive" conduct that affected the terms and conditions of her employment and (2) Lincare took prompt remedial action to address the alleged harassing conduct.

## A.     Hudson Cannot Prove She Was Subject to Sufficiently Severe or Pervasive Conduct

The Supreme Court has "made it clear that conduct must be extreme to amount a change in terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The legal standard for workplace harassment is "high" and the "harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 509 (5th Cir. 2003) (quoting *Flowers v. S. Reg'l*

---

[22] "The Fifth Circuit analyzes § 1981 claims and TCHRA claims under the same standard as claims under Title VII." *Vital v. Natl. Oilwell Varco*, CIV.A. H-12-1357, 2014 WL 4983485, at *12 (S.D. Tex. Sept. 30, 2014).

*Physician Servs. Inc.*, 247 F.3d 229, 236 (5th Cir. 2001)). To be actionable, the harassment must be both objectively and subjectively offensive. *Harvill v. Westward Communications, LLC*, 433 F.3d 428, 434 (5th Cir. 2005). Courts consider a number of factors when determining whether conduct was "severe or pervasive" including: "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating (or whether it is a mere offensive utterance), and whether it unreasonably interferes with the victim's work performance." *Faragher*, 524 U.S. at 788. "Title VII ... is not a 'general civility code,' and 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment." *Id.* Further, as the District Court stated, the "'mere utterance of an …epithet which engenders offensive feelings" is insufficient," nor are isolated incidents unless extremely serious. *See* (ROA.1119) (quoting *Johnson v. TCB Const. Co., Inc.*, 334 Fed. App'x. 666, 670 (5th Cir. 2009) and citing *Grant v. UOP, Inc.*, 972 F. Supp. 1042, 1047 (W.D. La. 1996) *a'ffd*, 122 F.3d 1066 (5th Cir. 1997)); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Faragher*, 524 U.S. at 788.

"Second hand harassment" is when the plaintiff does not personally hear the remarks or when the remarks were not directed at the plaintiff. *See Moser v. Indiana Dept. of Corrections*, 406 F.3d 895, 903 (7th Cir. 2005). "Second hand harassment, although relevant, is less objectionable than harassment directed at the plaintiff."

*Johnson*, 334 Fed. App'x. at 670. Hudson's alleged harassing acts were all either second hand harassment and/or isolated incidents committed by different coworkers. Hudson was not in the office when Ruiz made the Aunt Jemima comment, which was not even a racially charged comment. *See Burrell v. Crown Cent. Petroleum, Inc.*, 121 F. Supp. 2d 1076, 1079 (E.D. Tex. 2000) (comments such as comparing plaintiff to Whoopi Goldberg was not indicative of a racial hostile work environment). Hudson did not hear Ruiz call her "loud and black" or "ghetto," and only learned of these alleged comments secondhand from coworkers and has no idea whether they actually occurred. Therefore, they are not proper summary judgment evidence. *See Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) ("Provided that the evidence meets the usual requirements for evidence presented on summary judgment—including the requirements that it be based on personal knowledge..."); *In re Grandote Country Club Co. Ltd.*, 252 F.3d 1146, 1153 (10th Cir. 2001) (explaining that the plaintiff cannot oppose summary judgment based on his own testimony when his personal knowledge was based on another person's inadmissible hearsay statement). Avera's alleged comment about Hudson's hair was a one-time incident that Hudson never reported, which marginalizes such alleged harassing conduct. *See Vital*, 2014 WL 4983485, at *14 (courts must consider a plaintiff's failure to report alleged harassment when weighing severity and pervasiveness).

Hudson alleges Torres used the N-word on the telephone and when speaking

with others and only used it towards her on one occasion during the June 20 meeting. A co-worker's use the N-word in a conversation in the presence of but not directed towards the plaintiff is not sufficient to establish a hostile work environment. *See White v. Govt. Employees Ins. Co.*, 457 Fed. App'x. 374, 379–80 (5th Cir. 2012) (referring to someone else as "n***r" and other racially inappropriate comments not directed at plaintiff were not extreme enough to amount a change in the terms and conditions of her employment); *Davis v. Indep. Contract Drilling, Inc.*, 4:16-CV-00252, 2019 WL 1200808, at *12 (S.D. Tex. Mar. 14, 2019) (a coworker's repeated use of the N-word during a conversation that involved the plaintiff – but not targeted towards the plaintiff – did not constitute a hostile work environment). The Fifth Circuit has specifically rejected claims for hostile work environment when a <u>supervisor</u> frequently used the N-word to refer to the plaintiff because it was outside of the plaintiff's presence. *See, e.g., Peterson v. Linear Controls, Inc.*, 757 Fed. App'x. 370, 375 (5th Cir. 2019) (supervisor's use of the N-word to describe the plaintiff outside of the plaintiff's presence did not constitute hostile work environment); *Johnson*, 334 Fed. App'x. at 671 (a supervisor's frequent use of the term "n****r" outside of the plaintiff's presence insufficient to establish a hostile work environment).

The overwhelming evidence—including Hudson's own statement prepared one day after the incident, sworn EEOC charge, and Complaint—demonstrates that

Torres did not actually call Hudson the N-word or "n****r bitch" during the meeting. The Fifth Circuit has long held that a plaintiff cannot create a genuine issue of material fact with self-serving testimony that contradicts her own prior testimony or statements. *See Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, n.23 (5th Cir. 1992). The "sham-affidavit" doctrine prevents a plaintiff from defeating summary judgment by creating a fact issue using evidence that impeaches, without explanation, sworn testimony. *Seigler v. Wal-Mart Stores Texas, L.L.C.*, 30 F.4th 472, 477 (5th Cir. 2022). Throughout her Brief, Hudson relies heavily on her own inconsistent deposition testimony that Torres called her a "n****r bitch" in the June 20, 2019 meeting. This testimony directly contradicts Hudson's sworn EEOC charge, the allegations in her Complaint, and her statements to HR the same day the meeting occurred.[23] Hudson cannot create her own fact issue by changing her story to better meet the needs of her case at her deposition – which is in essence a "sham affidavit." The Court should disregard Hudson's contradictory testimony when determining whether Hudson has shown a *prima facie* case of hostile work environment. *See S.W.S. Erectors, Inc. v. Infax, Inc*., 72 F.3d 489, 496 (5th Cir. 1996) (self-serving assertions contradicting previous testimony are insufficient evidence to overcome a summary judgment motion)*; Johnson v. UAH Prop. Mgt., Ltd. Partn.*, 428 Fed. App'x. 311, 312 (5th Cir. 2011) (appellant's presented evidence was

---

[23] *See Supra* at f.n.9 for a summary of Hudson's various versions.

18

incompetent summary judgment evidence since it contradicted prior sworn testimony).

However, even if Hudson's latest version of events did happen, Torres' alleged use of the N-word in the June 20 meeting does not meet the necessary "severe or pervasive" threshold. Hudson was only called the N-word on one occasion, which the Fifth Circuit has consistently held is insufficient to establish a hostile work environment based on race. *See, e.g., Grant*, 972 F. Supp. at 1047, *aff'd*, 122 F.3d 1066 (the court found that five separate utterances of the "N" word directly to the plaintiff were insufficient to establish a hostile work environment claim); *Howard v. United Parcel Serv., Inc.*, 447 F. App'x 626, 632 (5th Cir. 2011) (rejecting claim grounded in one "racially inappropriate" term directed toward plaintiff and allegations that other employees overheard racial slurs); *Johnson*, 334 Fed. App'x. at 671 (plaintiff failed to establish a racially hostile work environment even though supervisor told the plaintiff he was "just like a damn n****r" and frequently use of the term "n****r" outside of the plaintiff's presence). The Fifth Circuit has affirmed summary judgment based on the failure to establish a racially hostile work environment in cases with significantly more vitriolic allegations involving racial slurs. *See, e.g., Frazier v. Sabine River Auth.*, 509 F. App'x 370, 374 (5th Cir. 2013) (finding that use of the N-word, the word "Negreet," and a noose gesture "were isolated and not severe or pervasive enough" to create a hostile work environment);

*Vaughn v. Pool Offshore Co.*, 683 F.2d 922, 924-25 (5th Cir. 1982) (use of the N-word, "coon," and "black boy"); *Dailey v. Shintech, Inc.*, 629 F. App'x 638, 640, 644 (5th Cir. 2015) (no hostile work environment where a coworker called plaintiff a "black little motherf—r" and threatened to "kick his black a—s" and called the N-word); *Collier v. Dallas County Hosp. Dist.*, 827 Fed. App'x. 373, 378 (5th Cir. 2020) (unpublished), cert. denied, 141 S. Ct. 2657 (2021) (no hostile work environment when the plaintiff was subjected to the N-word in the form of graffiti for months and called "boy"); *Mosley v. Marion County*, 111 F. App'x 726, 728 (5th Cir. 2004) (holding that evidence of three incidents involving racial slurs was insufficient to support a hostile work environment claim); *Pickens v. Chell Tech. Ventures, Inc.*, 118 F. App'x 842, 850 (5th Cir. 2004) (holding that a company Christmas party where a skit with characters in blackface was performed and racially insensitive comments were made to plaintiff did not create a hostile work environment); *Moore v. United Parcel Serv., Inc.*, 150 Fed. App'x. 315, 319 (5th Cir. 2005) (allegations that supervisors called plaintiff a "n****r," a "mother f* * *er," and referred to him as "you people" which were never complained of, and belief that discipline was racially motivated, failed to provide evidence sufficient to create material issue that workplace was abusive or hostile working environment).

Hudson relies heavily on *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022), a recent Fifth Circuit opinion, to support her argument that one use of the N-word is

sufficient to establish a hostile work environment. However, *Woods* is easily distinguishable from this case. In *Woods*, the plaintiff's **supervisor** called the plaintiff a "Lazy Monkey A__ N___" in the presence of other employees. *Id.* The Fifth Circuit looked to other circuits that recognized, "perhaps no single act can more quickly 'alter the conditions of employment and create an abusive working environment' than the use of [the N-word] by a **supervisor** in the presence of his subordinates." *Id.* (internal quotations and citations omitted) (emphasis added). Assuming *arguendo* Torres called Hudson the N-word, Torres was Hudson's **co-worker – not supervisor**. Torres' use of the word, while still inappropriate, does not carry the same weight as a supervisor's use of the term. There is a striking difference between harassing conduct from a supervisor with immediate authority over the plaintiff and harassing conduct from a coworker. To such an extent that the Fifth Circuit drew a distinction between the two types of cases – adding an additional fifth element that plaintiffs must prove to demonstrate a hostile work environment claim involving co-worker harassment. *See Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

A supervisor's actions subject an employer to vicarious liability to the victimized employee – while a co-worker's do not. *Id.* Therefore, if the harassing conduct is committed by a coworker, the plaintiff must also show that the company failed to take prompt remedial action to establish vicarious liability over the

employer. *Id.* This is because a co-worker, like Torres, does not have the ability to discipline, fire, promote, distribute work, or exert any control or significantly affect the terms and conditions of Hudson's employment. Nor can Torres speak on behalf of or impute her actions on Lincare like a supervisor could. Lincare can only be directly liable for Torres' actions if its negligence was a cause of the harassment, which was not the case considering Lincare first learned of the conduct at the June 20 meeting and put an end to it shortly thereafter. *See Sharp v. City of Houston*, 164 F.3d 923, 929 (5th Cir. 1999) ("[T]he negligence standard governs employer liability for *co-worker* harassment.") (emphasis in original). Unlike *Woods*, this case involved a co-worker – not a supervisor – saying the N-word to the appellant. Torres' use of the N-word did not alter the power dynamic between a supervisor and subordinate like it did in *Woods*. Hudson's reliance on *Woods* is misplaced since the circumstance here are drastically different. A co-worker's use of the N-word cannot possibly defeat the well-established line of Fifth Circuit precedent stating "a single utterance of a racial epithet…cannot support a hostile work environment claim." *See Woods*, 29 F.4th at 285.

Hudson's alleged hostile work environment claims are further belied by the fact she spent the vast majority of her work day in the field making sales away from the alleged harassers. When Hudson did work in the office, she worked on the opposite side of the building as the alleged harassers. To be a hostile work

environment, the harassment must affect a term, privilege, or condition of employment. *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325 (5th Cir. 2004). It is common sense that Hudson's employment was less likely to be affected by the alleged harassers since she only worked in their physical presence for a small fraction of the workweek. *See Reddy v. Super. Glob. Sols., Inc.*, 4:11-CV-845, 2013 WL 3215740, at *10 (E.D. Tex. June 24, 2013), *aff'd sub nom.*, 572 Fed. App'x. 265 (5th Cir. 2014) (plaintiff who worked remotely could not establish hostile work environment); *see also Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 459 (S.D.N.Y. 2013), *aff'd sub nom.*, 588 Fed. App'x. 15 (2d Cir. 2014) (conduct did not adversely affect terms and conditions of plaintiff's employment because it occurred in a different office area than where she worked). Moreover, Hudson admitted that she did not experience any harassing conduct at any point after June 20 and, therefore, worked for Lincare for nearly two months without being subject to any alleged harassment. Therefore, Hudson cannot establish the pattern of race-based harassment necessary to constitute a hostile work environment. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012) (affirming district court's grant of summary judgment on hostile work environment claims where there was no evidence the conduct was a part of a pattern of race-based harassment).

The District Court properly granted summary judgment on Hudson's hostile work environment claims because Hudson was not subjected to sufficiently severe

or pervasive conduct that affected a term, condition, or privilege of her employment.

## B.     Lincare Took Prompt Remedial Action That Ended the Alleged Harassing Conduct

Even if Hudson demonstrates she was subjected to severe or pervasive conduct, which she cannot, Hudson's hostile work environment claims still fail because Lincare took prompt remedial action that stopped the alleged harassing conduct.[24] *See Williams-Boldware v. Denton County, Tex.*, 741 F.3d 635, 640 (5th Cir. 2014) ("A defendant may avoid Title VII liability when harassment occurred but the defendant took 'prompt remedial action' to protect the claimant.") The District Court correctly explained that "Lincare took sufficiently prompt remedial action when Greenway and Lichtenberg initiated an investigation, interviewed the employees involved, and issued final written warnings to Torres and Ruiz."

---

[24] The vast majority of the alleged harassment was committed by Hudson's co-workers, Torres and Boyd. Thus, Hudson must prove that Lincare knew or should have known about the harassment and failed to take prompt remedial action. *Ramsey,* 286 F.3d at 268. To the extent Hudson argues Avera's comment about Hudson's hair and aggressive attitude constituted a hostile work environment, which is not the case, the claim would fail because Lincare took reasonable steps to avoid harassment and Hudson unreasonably failed to take advantage of these preventative opportunities. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Lincare enforced an anti-harassment policy with a reporting procedure for employees to utilize if they needed to complain about harassment and Hudson failed to take advantage of these preventative opportunities by not reporting Avera's alleged harassing conduct. *See Lauderdale v. Texas Dept. of Crim. J., Institutional Div.*, 512 F.3d 157, 165 (5th Cir. 2007). Further, any such argument has been waived since it was not presented by Hudson on appeal. *See Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal.").

(ROA.1120-21). In *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 794–95 (5th Cir. 1994) (per curiam), the Fifth Circuit held than an employer took prompt remedial action because "[i]t took the allegations seriously, it conducted prompt and thorough investigations, and it immediately implemented remedial and disciplinary measures based on the results of the investigation." Like the employer in *Carmon*, Lincare promptly and thoroughly investigated Hudson's complaint and issued remedial action to the alleged harassers **five days later**.[25] Lincare issued final written warnings to the first-time offenders and warned them that further discriminatory and inappropriate comments would result in their immediate termination. Lincare took sufficient remedial action by taking Hudson's complaints seriously, investigating, and then redressing her coworkers' conduct through discipline just days later. *See Williams-Boldware*, 741 F.3d at 641 (affirming summary judgment holding that

---

[25] Hudson attempts to create a fact issue regarding the issuance of the final warnings because Torres testified that she did not remember receiving the disciplinary action. However, this argument fails for a number of reasons. Lichtenberg testified that she issued these final warning to Ruiz and Torres on June 25, 2019. (ROA.359.) Ruiz testified she received the final warning on June 25, 2019. (ROA.319.) Torres testified that she did not remember receiving the final written warning but that she not remembering does not mean it did not occur. (ROA.346-47.) Importantly, Torres did not remember much at all about her employment with Lincare – as she said "I don't remember" over 40 times during a 46-minute deposition. (ROA.336-345). Torres' inability to remember receiving the write up – or to remember much of anything for that matter – does not create an issue of fact that would preclude summary judgment. *See Knight v. City of New Orleans*, No. 89-3409, 1991 WL 126387, at *7 (E.D. La. July 1, 1991) (a plaintiff's lack of knowledge about a certain event did not create an issue of fact that would preclude summary judgment).

employer took sufficient remedial action when it "took seriously the [plaintiff's] complaints and its remedial efforts effectively halted the racially harassing conduct of which she complained.").

Hudson's argument that Lincare's remedial action was insufficient fails because Lincare was not required to terminate Ruiz's or Torres's employment. *See id.* at 640 ("Employers are not required to impose draconian penalties upon the offending employee in order to satisfy the court's prompt remedial action standard."); *Woods v. Delta Bev. Group, Inc.*, 274 F.3d 295, 300 (5th Cir. 2001) (employer was not legally obligated to fire harasser or separate him from plaintiff). In *Houston v. EBI Cos.*, 53 F.3d 1281 (5th Cir. 1995) (per curiam), the Fifth Circuit held an employer took prompt remedial action in response to a complaint of a racially offensive comment by giving the harasser a stern warning advising that racially offensive language would not be tolerated in the future, and the harasser did not make any other racist remarks in the plaintiff's presence after the warning. In *Woods*, the Fifth Circuit affirmed summary judgment for the employer, and held the employer took prompt remedial action because (1) district managers told the harasser to stop the unwelcome touching and informed him that failure to do so would result in further discipline, (2) a manager asked the plaintiff whether the harassment had stopped and was told there were "no problems on that day," and (3) supervisors told plaintiff to inform them of any further harassment. 274 F.3d at 300.

Lincare's remedial action of issuing final written warnings was successful as Hudson testified she never heard Torres say the N-word again after or heard other race-related comments from either alleged harasser after the final warnings.[26] *See Skidmore v. Precision Printing and Pkg., Inc.*, 188 F.3d 606, 616 (5th Cir. 1999) ("In many such instances, in determining whether the employer's actions were remedial, we [the Fifth Circuit] have considered whether the offending behavior in fact ceased" indicating that the cessation of offending behavior is evidence that an employer's actions were sufficiently remedial).

In her Brief, Hudson focuses on the July 5, 2019 report of the "Aunt Jemima" comment which occurred either months before or, at the latest, June 25, the same day that Lincare issued final warnings to Torres and Ruiz. The record is devoid of any evidence that suggests this comment occurred any later than June 25. When Ruiz made the comment, Greenway immediately told her not to make comments like that, which constitutes prompt remedial action in and of itself. *See Houston*, 53 F.3d at 1281 (affirming summary judgment holding that the supervisor's immediate counseling of alleged harasser that stopped the harassment was sufficient remedial action). Lichtenberg then investigated Hudson's July 5 complaint and could not

---

[26] Hudson later complained of the "Aunt Jemima" comment, which was made by Ruiz prior to the final written warning being issued to her. Hudson did not personally hear the comment and has no idea when the comment was made and cannot rely on Gove's hearsay to oppose summary judgment. *See Payne,* 337 F.3d at 773.

determine when the comment was made but given the potential dates, it was likely addressed with Ruiz in the final warning, in which Ruiz was told that any continued harassing conduct or comments would lead to her termination. Again, Lincare's remedial action was successful since Hudson never complained of any further comments or harassing conduct by Ruiz. While Hudson now challenges Lichtenberg's investigation, Lincare was not required to conduct a "perfect" investigation to satisfy its duty to take prompt remedial action. *See Swenson v. Potter*, 271 F.3d 1184, 1197 (9th Cir. 2001) ("Even assuming that the investigation was less than perfect, the [defendant] nevertheless took prompt action to remedy the situation."). Lincare took prompt remedial action after both of Hudson's complaints, which is evidenced by the fact that Hudson never <u>heard</u> the N-word or any harassing comments at any point after the June 25 disciplinary action was issued.

To the extent Hudson alleges the harassment continued after the remedial action, the District Court correctly reasoned that <u>Lincare cannot be liable for any subsequent harassment of which it had no knowledge</u>.[27] *See* (ROA.1120); *Woods*, 274 F.3d at 299. In *Woods*, the Fifth Circuit held that an employee's failure to report continued harassment after being instructed to do so by the company was fatal to the

---

[27] While Hudson stated generally in her resignation letter that the "harassment continued," she testified that she never heard the N-word and could not identify any other instances of discriminatory conduct she experienced after the final written warnings were issued. (ROA.269; ROA.306.)

employee's hostile work environment case.[28] A plaintiff "cannot rely on his past complaint to [the employer] to shield himself from his obligation to report continuing harassment." *Sims v. Equilon Pipeline, Inc.*, CIV.A. SA-01-CA-0875, 2004 WL 557314, at *14 (W.D. Tex. Feb. 3, 2004) (granting summary judgment because employer had no knowledge of continued harassment even when plaintiff testified he complained before and did not report the co-worker harassment because he believed the company was ineffective at dealing with harassment). Lincare did not have knowledge of any alleged continued harassment prior to Hudson's resignation from the company, and thus cannot be held liable for such. *See Wantou v. Wal-Mart Stores Texas, LLC*, 23 F.4th 422, 434 (5th Cir. 2022) (affirming summary judgment holding that the employer could not be liable for the alleged harassing conduct since the plaintiff never reported it).

Hudson's hostile work environment claims fail because she cannot prove that Lincare failed to take prompt remedial action on any harassing conduct it had or should have had knowledge of, and in fact her testimony supports that the conduct did not continue. Accordingly, the Court should affirm the District Court's opinion granting summary judgment in favor of Lincare on Hudson's hostile work

---

[28] The court's reasoning in *Woods* is on point: ("To avoid further harm after July 7, Woods needed to reasonably take advantage of the corrective opportunities provided by her employer. Woods cannot have expected Delta Beverage to solve her problem when it had no knowledge that she continued to suffer harassment.") 274 F.3d at 299.

environment claims.

### III.    The District Court Properly Granted Summary Judgment on Hudson's Retaliation Claims

To establish a *prima facie* case of retaliation, Hudson must establish (1) she engaged in protected conduct; (2) she suffered a materially adverse action; and (3) a causal connection exists between the protected conduct and the adverse action. *Cabral v. Brennan*, 853 F.3d 763, 766-67 (5th Cir. 2017). Hudson's retaliation claims based on her unsupported allegations[29] that Torres and Ruiz failed to work with her and/or deleted her orders in retaliation for her complaints fail for several reasons.[30] First, the alleged conduct does not constitute an adverse employment action. *See Nkemakolam v. Northside Indep. Sch. Dist.*, 5:15-CV-99-DAE, 2015 WL 3651546, at *6 (W.D. Tex. June 11, 2015) (supervisor's interference with work performance not adverse employment action for retaliation purposes). Second, Lincare cannot be held liable for the rogue conduct of two low-level, non-supervisory employees. *Brandon v. Sage Corp.*, 808 F.3d 266, 273 (5th Cir. 2015)

---

[29] Hudson has not presented any evidence that that these actions occurred. Conversely, Greenway testified that Hudson continued working with Ruiz and Greenway without incident. (ROA.334.) Ruiz testified she never deleted Hudson's orders. (ROA.320.) Hudson never complained of the alleged conduct. (ROA.267; ROA.270; ROA.362.)

[30] Hudson did not raise the issue of constructive discharge on appeal; therefore, the only possible adverse employment action at issue is the alleged deletion/sabotage of Hudson's orders by Torres and Ruiz. *See Cinel*, 15 F.3d at 1345 (holding an appellant abandons all issues not raised and argued in its initial brief on appeal).

(In a Title VII retaliation case, an employer can only be liable "for an employment decision made by supervisory employees, where the supervisory employees were agents of the employer with regard to the employment status of the plaintiff."). The District Court artfully explained that Torres and Ruiz's conduct would not constitute an adverse employment action because they were not her supervisors or Lincare's agents and Lincare did not empower them to take tangible employment actions against the plaintiff. Lastly, even if there was an adverse act, Hudson cannot establish that her complaints were the "but for cause" of Torres and Ruiz's actions since Lichtenberg never told them about Hudson's complaints and Hudson has otherwise failed to present evidence either had knowledge of such. *See Hernandez*, 670 F.3d at 661 (affirming district court's grant of summary judgment on retaliation claim because appellant did not establish protected conduct was the "but for" cause of termination).

Hudson argues, **for the first time in her appeal**, that Lincare is now liable for retaliation based on a cat's paw theory in that Torres and Ruiz knowingly sabotaged her orders which led to Greenway placing Hudson on a "formal action

plan."[31] As an initial matter, the Court should not consider this new argument raised by the first time in Hudson's appeal. *See Martco Ltd. P'ship*, 588 F.3d at 877 ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal."); *LeMaire v. Louisiana Dept. of Transp. and Dev.*, 480 F.3d 383, 388 (5th Cir. 2007) (refusing to consider argument raised for the first time on appeal). Even if the Court were to address the argument, it fails because an action plan would not have constituted an adverse employment action required for a retaliation claim. *See DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 Fed. App'x. 437, 442 (5th Cir. 2007) (written warning not an adverse employment action); *Turner v. Novartis Pharma. Corp.*, 442 F. App'x 139, 141 (5th Cir. 2011) (holding that placing an employee on a performance improvement plan is "not an ultimate employment decision"). Hudson deduces that a "formal action plan meant she was on a final written warning and could be terminated at any time." Even if that were the case, it still would not amount to an adverse employment action. *See Boykins v. Entergy Operations, Inc.*, 180 F.3d 262 (5th Cir. 1999) ("In any event,

---

[31] The record evidence shows that Hudson was not placed on a formal written action plan. Greenway testified that she believed Hudson was placed on an action plan but she did not know the dates, and she had been counseled several times by upper management, *i.e.*, Tina Avera and Mike Potter. (ROA.339.) Potter stated that he had been counseling Hudson about performance issues and planned to issue formal disciplinary action in August 2019 if her performance did not improve. (ROA.504.) Lichtenberg testified that Hudson was never placed on a formal action plan. (ROA.356.)

the law is clear that a threat or "final warning" of termination has no immediate impact on a plaintiff's working conditions, so as to constitute an adverse employment action.").

Hudson further claims that Greenway "empowered" Ruiz and Torres to take tangible action over Hudson because Greenway "chose to ignore what was happening" and allowed Ruiz and Torres to "sabotage" Hudson's orders. Hudson never reported to Lincare that Ruiz and Torres were sabotaging her orders. There is no evidence in the record that shows Ruiz or Torres ever sabotaged or interfered with Hudson's orders. While there were issues between the CSRs and Sales Reps that led to the June 20 meeting, Greenway did not believe the CSRs were purposefully holding orders. *See* (ROA.377). Hudson's own speculation and conspiracy theory cannot create an issue or fact or otherwise prevent summary judgment. *See Ramsey*, 286 F.3d at 241 (quoting *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc)) ("Conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment."); *Standley v. Rogers*, 680 Fed. App'x. 326, 327 (5th Cir. 2017*)* ("The district court properly determined that Standley's subjective beliefs and speculation about the reason for the NSA's adverse employment actions did not create a genuine issue of material fact as to but-for causation. The district court correctly granted summary judgment to Rogers on

Standley's claim for retaliation."). Further, Torres and Ruiz could not have retaliated against Hudson because they had no knowledge Hudson complained about racial harassment or that she engaged in any other protected conduct. *See Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct."); *Bruno-Ponthier v. United Parcel Serv.*, 285 Fed. App'x. 167, 168 (5th Cir. 2008) (affirming summary judgment on retaliation claim because plaintiff could not demonstrate causation since the alleged retaliator had no knowledge of plaintiff's sexual harassment complaints).

For the reasons mentioned above, the Court should affirm the District Court's opinion granting summary judgment in favor of Lincare on Hudson's retaliation claims.

## CONCLUSION

The District Court properly granted Lincare's Motion for Summary Judgment. Based on the undisputed record, Hudson cannot prove a *prima facie* case of hostile work environment or retaliation; but, even if she could, the District Court properly found that Lincare took appropriate prompt, remedial action which was designed to end the alleged harassment. Hudson has not challenged the District Court's ruling on any of her other claims. Therefore, Lincare respectfully requests that this Court

affirm the District Court's February 2, 2022 Order entering judgment in its favor.

Dated: July 5, 2022

Respectfully submitted,

By: /s/ *David M. Kalteux*
Rachel Z. Ullrich
Texas Bar No. 24003234
rullrich@fordharrison.com

David M. Kalteux (*pro hac vice*)
Florida Bar No. 118746
dkalteux@fordharrison.com

**FORDHARRISON LLP**
1601 Elm Street, Suite 4450
Dallas, Texas 75201
Telephone: (214) 256-4700
Facsimile: (214) 256-4701

**ATTORNEYS FOR DEFENDANT
LINCARE INC.**

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, as this brief contains 8,426 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I also certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), as this brief has been prepared in a proportionally spaced typeface using Microsoft Word and Times New Roman 14-point font.

/s/ *David M. Kalteux*
Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 5, 2022, a true and correct copy of the

Brief of Appellee Lincare Inc. was electronically filed using the Court's CM/ECF

system which will send an electronic copy to those listed below:

Holt M. Lackey
E-Mail:  hlackey@equalrights.law
Jay D. Ellwanger
jellwanger@equalrights.law
Ellwanger Law LLP
8310-1 N. Capital of Texas Hwy, Ste. 190
Austin, Texas  78731


/s/ *David M. Kalteux*
Attorney

WSACTIVELLP:13215462.1

37