# United States Court of Appeals
## *for the*
## Fifth Circuit

Case No. 22-50149

BRITTANY HUDSON,

*Plaintiff-Appellant,*

v.

LINCARE, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS IN CASE NO. 1:20-CV-928
ROBERT PITMAN, U.S. DISTRICT JUDGE

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

Holt M. Lackey
Jennifer Jones Despins
ELLWANGER LAW, L.L.L.P.
8310-1 N. Capital of Texas Hwy, Suite 190
Austin, Texas 78731
(737) 808-2260
hlackey@equalrights.law
*Attorney for Plaintiff-Appellant, Brittany Hudson*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

I.   STATEMENT OF THE ISSUES PRESENTED ............................................. 1

II.  INTRODUCTION ............................................................................................ 2

III. ARGUMENT .................................................................................................... 3

    A.   Defendant Fails to Recognize the Disputed Facts ..................................... 3

        1. Ms. Torres Called Plaintiff a N-word in a Full-Staff Meeting ........... 3

        2. Ms. Ruiz Referred to Plaintiff as Aunt Jemima After Receiving a
           Final Warning ................................................................................... 5

    B.   Defendant Fails to Explain Why *Woods* Does Not Require Reversal of
        the District Court ....................................................................................... 6

    C.   Plaintiff's Theory of Retaliation is Not New .......................................... 10

IV.  CONCLUSION ............................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Aryain v. Wal - Mart Stores Texas LP*,
　　534 F.3d 473 (5th Cir. 2008) ........................................................................12

*Burlington Northern & Santa Fe Railway Co. v. White*,
　　548 U.S. 53, 68, 126 S.Ct. 2405 (2006)........................................................12

*Burrell v. Crown Cent. Petroleum, Inc.*,
　　121 F.Supp.2d 1076 (E.D. Tex. 2000)............................................................6

*Burton v. Freescale Semiconductor, Inc.*,
　　798 F.3d 222 (5th Cir. 2015) ..........................................................................4

*Heinsohn v. Carabin & Shaw, P.C.*,
　　832 F.3d 224 (5th Cir. 2016) ..........................................................................4

*Holloway v. Dep't of Veterans Affairs*,
　　309 F.App'x 816 (5th Cir. 2009) ..................................................................12

*Johnson v. PRIDE Industries, Inc.*,
　　7 F.4th 392  (5th Cir. 2021) ............................................................................9

*Johnson v. TCB Const. Co., Inc.*,
　　334 Fed. Appx. 666 (5th Cir. 2009)................................................................9

*Nat'l R.R. Passenger Corp. v. Morgan*,
　　536 U.S. 101, 106, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).........................9

*Peterson v. Linear Controls, Inc.*,
　　757 Fed.Appx.370 (5th Cir. 2019)................................................................11

*Porter v. Houma Terrebonne Hous. Auth. Bd. Of Com'rs*,
　　810 F.3d 940 (5th Cir. 2015) ........................................................................12

*Tolan v. Cotton*,
    572 U.S. 650 (2014)............................................................................................3

*Vital v. Nat'l Oilwell Varco*,
    2014 WL 4983485 (S.D. Tex. 2014) ..................................................................9

*Wantou v. Wal-Mart Stores Texas*,
    *L.L.C.,* 23 F.4th 422  (5th Cir. 2022) .........................................................8, 10

*Waste Mngmt of La., L.L.C. v. River Birch, Inc.*,
    920 F.3d 958 (5th Cir. 2019) ............................................................................3

*Wheat v. Florida Parish Juvenile Justice Co.*,
    811 F.3d 702 (5th Cir. 2016) ..........................................................................12

*Woods v. Cantrell*,
    29 F.4th 284 (5th Cir. 2022) .......................................................................7, 8

**Statutes**

42 U.S.C. § 2000e-5(e)(1).........................................................................................8

**I.    STATEMENT OF THE ISSUES PRESENTED**

1. Did the District court err when it held that "under the law of this Circuit, more is required to sustain a claim for hostile work environment" than four known uses of the "N-word" and other slurs in a supervisor's presence, including uses directed at Plaintiff?

2. Did the District Court commit reversible error when it granted summary judgment to Defendant on Plaintiff's hostile workplace claim by deciding disputed issues of fact in favor of Defendant regarding the promptness and adequacy of its remedial measures?

3. Did the District Court err when it granted summary judgment on Plaintiff's retaliation claim because the employees who retaliated were "not empowered to take tangible actions" against Plaintiff, where those employees' sabotage of Plaintiff's job performance made up the basis for the tangible actions taken against Plaintiff by their mutual supervisor, and evidence supports a finding that the supervisor was aware of the employees' sabotage?

## II.   INTRODUCTION

On July 5, 2022, Defendant-Appellee Lincare Inc., ("Lincare" or "Defendant") filed the Brief for Appellee-Defendant (hereinafter "Appellees' Brief") in response to Plaintiff Brittany Hudson's ("Plaintiff" or "Ms. Hudson") Brief for Appellant-Plaintiff ("Appellant's Brief").

Defendant is only able to support their contention that this Court should uphold the District Court's grant of summary judgment by (1) cherry-picking the evidence that supports the factual conclusions in support of its defenses while plainly ignoring the multitude of evidence in the record, including Defendant's own internal documentation and their employees' own testimony, identifying crucial issues of fact that require denial of summary judgment; (2) failing to adequately distinguish the Court's recent holding in *Woods* with the facts constituting proof of a hostile work environment requiring a final adjudication by a jury and not a court; and (3) wrongfully claiming that Plaintiff's theory of Defendant's liability for retaliation was argued for the first time on appeal.  Defendants' arguments fail for the reasons detailed below.

## III. ARGUMENT

### A. Defendant Fails to Recognize the Disputed Facts

The evidence and testimony of record raises critical issues of material fact precluding summary judgment in Defendant's favor. Rather than accept this rule of law, Defendant repeatedly requests the Court to accept its version of the disputed facts. It is a fundamental principle that the court "may not resolve genuine issues of material fact in favor of the party seeking summary judgment and that "reasonable inferences should be drawn in favor of the nonmoving party." *Tolan v. Cotton,* 572 U.S. 650, 656, 660 (2014) (finding that the "court below credited the evidence of the party seeking summary judgment and failed properly to acknowledge key evidence offered by the party opposing that motion"); *Waste Mngmt of La., L.L.C. v. River Birch, Inc.,* 920 F.3d 958, 973 (5th Cir. 2019) (vacating grant of summary judgment and stating that "[t]his close case – where the evidence could support a verdict for either side, depending on the evidence the jury credits and the reasonable inferences drawn from that evidence – is tailor-made for a trial, not summary judgment"). The District Court erred in resolving questions of fact in Defendant's favor, and Defendant continues to fail to accept Plaintiff's evidence here.

####   1.   Ms. Torres Called Plaintiff a N-word in a Full-Staff Meeting

Construing the disputed evidence in the light most favorable to Plaintiff, Ms. Torres called Plaintiff the n-word during a full team meeting in the presence of the

supervisor, Ms. Greenway. While Defendant claims that Plaintiff's "recollection of Torres' comments at the June 20 meeting has changed several times," (Appellee's Brief, at p.6 n. 9), not only does Plaintiff's version of the facts control on a summary judgment motion, but Defendant's own evidence supports Plaintiff's argument that Ms. Torres called her the n-word during this meeting.  Defendant's original ticket regarding this incident originated by Defendant's own system was titled: "<u>Brittany Hudson is called a racial slur during a team meeting</u>" before it was changed by Ms. Lichtenberg to "Brittany Hudson, Austin TX, complained of a racial slur during team meeting." (ROA.823;ROA.899) (emphasis added).  Defendant's own internal notes from the initial call into Human Resources stated that "<u>the customer service rep called her the N**ger and B**ch</u> repeatedly during the meeting." (ROA.900).

Defendant argues that there is no issue of material fact regarding whether Plaintiff was called the n-word because her own testimony is not sufficient and goes so far as to request the Court "disregard" Plaintiff's testimony since there are conflicts in the Record. (Appellee's Brief at p. 18).  However, not only is Plaintiff's sworn testimony sufficient to create a material issue of fact[1], but Defendant also fails

---

[1] *See, e.g., Heinsohn v. Carabin & Shaw, P.C.,* 832 F.3d 224, 245 (5th Cir. 2016) (reversing and remanding district court's grant of summary judgment where district court "erred in rejecting [plaintiff's] statements as self-serving and accepting [defendants.']"); *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 236 (5th Cir. 2015) (reversing district court's grant of summary judgment on an ADA claim where district court improperly chose "which testimony to credit and which to discard").

to even acknowledge that two pieces of their own evidence support Plaintiff's allegation and nullify their argument. (ROA.900;ROA.823;ROA.899).

Whatever conflict remains in this evidence, Plaintiff has submitted abundant evidence and drawing all reasonable inferences in her favor, Ms. Torres not only had used the n-word in the office repeatedly without any rebuke from Defendant, but she then called Plaintiff the n-word in all-hands meeting and her supervisor failed to immediately act.

### 2. Ms. Ruiz Referred to Plaintiff as Aunt Jemima After Receiving a Final Warning

Defendant claims that "Lincare has not received a complaint that Ruiz or Torres have used inappropriate or discriminatory language after receiving the final warnings;" "the record is devoid any evidence that suggests this comment occurred any later than July 25" and that this proves that Defendant took prompt remedial action, because Hudson never heard any harassing comments at any point after the June 25th disciplinary action was issued. (Appellee's Brief at p. 8, 28). These statements are false. There is <u>ample</u> evidence, including emails from Defendant's own employees, that these comments occurred <u>after</u> the alleged June 25th final warnings, signed copies of which have never been produced. Defendant's employee, Mr. Gove, who witnessed the comment and reported it, informed Ms. Lichtenberg that he heard the comment the first week in July – well after the June 25th final warning. (ROA.828;ROA.890) (Appellant's Brief at p. 13-14).

Defendant may not just ignore the evidence and testimony that does not fit their narrative. Again, resolving the contradicted evidence in the light most favorable to Plaintiff, Plaintiff was referred to as Aunt Jemima[2] by Ms. Ruiz <u>after</u> Ms. Ruiz received a final warning and Defendant failed to take prompt remedial action.[3]

**B.   Defendant Fails to Explain Why *Woods* Does Not Require Reversal of the District Court**

The District Court recognized that Ms. Torres has used the n-word previously on multiple occasions, and according to Plaintiff had used the word "frequently," "on a consistent basis," it was "part of her regular vernacular," and it was "part of her everyday vocabulary."[4] (ROA.2-1110-1111). While the District Court found that there were multiple uses of the n-word being used on the record, the District Court

---

[2] Defendant's claim that referring to Plaintiff as Aunt Jemima is not discriminatory has already been rebuked by several courts. (Appellant's Brief at p. 27, fn. 5). Defendant's comparing Plaintiff being called Aunt Jemima by a co-worker to a plaintiff being told she looks like Whoopi Goldberg is again, absurd. (Appellee's Brief at p. 16). Indeed, Defendant cites to *Burrell* for the claim such a comment was "not indicative of a racial [sic] hostile work environment", but the *Burrell* court never made this finding and indeed assumed that the plaintiff had alleged a hostile work environment yet granted summary judgment because the plaintiff failed to complain about the conduct and therefore could not prove the defendant had knowledge. *Burrell v. Crown Cent. Petroleum, Inc.,* 121 F.Supp.2d 1076, 1081 (E.D. Tex. 2000).

[3] As previously argued, Plaintiff disputes that Ms. Torres ever received a final warning given that she testified she does not remember receiving one, and Defendant failed to produce a signed warning. Furthermore, Plaintiff disputes that Ms. Ruiz received final warning because she also does not remember being counseled and claims she refused to sign anything, and again Defendant failed to produce a signed warning. (Appellant's Brief at p. 10-11).

[4] Defendant claims that Plaintiff stated that Ms. Torres used the n-word "a few times." (Appellee Brief, at p. 5). This is false.

6

found that "under the law of this Circuit, more is required to sustain a claim for hostile work environment." (ROA.1119).

However, the law of this Circuit has since been clarified, and now only <u>one</u> instance of the n-word may suffice to constitute a hostile work environment. *Woods v. Cantrell,* 29 F.4th 284 (5th Cir. 2022). Defendant attempts to distinguish *Woods* by arguing that Plaintiff was not called the n-word by a supervisor and that none of the other evidence of discriminatory conduct perpetrated against Plaintiff is relevant. Both arguments fail.

First, Defendant claims that *Woods* does not control because Ms. Torres' use of the n-word did not "alter the power dynamic." (Appellee's Brief at p. 22). To be sure, the Plaintiff in *Woods* alleged a single instance of his supervisor calling him a "Lazy Monkey A___N___." *Woods,* 29 F.4th at 285. The District Court had granted dismissal upon finding that "a single utterance of a racial epithet, despicable as it is, cannot support a hostile work environment claim." *Id.* In reversing the District Court's holding as to this solitary claim of a hostile work environment, this Court clarified that the law of this Circuit has been that under a totality of circumstances test, a single incident of harassment, if sufficiently severe, [can] give rise to a viable Title VII claim." *Id.* Therefore, in relying on the law of several other circuits, this Court found that a single instance of a supervisor calling a plaintiff a "Lazy Monkey A___N___" was sufficient to state an actionable claim of a hostile work

environment. *Id.* at 286. Indeed, this Court found that the plaintiff could also be entitled to emotional and other damages that were alleged. *Id.*

Here, while the n-word did not come out of the supervisor's own mouth, Plaintiff's supervisor had previously condoned this language during a previous all-hands meeting where Plaintiff was the only Black employee in the room and failed to take immediate action during the June 20th meeting as well. (ROA.650-641;ROA.900). Ms. Greenway's only immediate action was to tell everybody to be respectful and berate Plaintiff for being aggressive and complain that Plaintiff "got in Anicia's face and told her not to say certain words." (ROA.675;ROA.766-777). The racial slur yelled at Plaintiff in front of her entire office, with her supervisor debatably taking the perpetrator's side over the only Black employee in the office toward whom the racial slur was directed, is sufficient to state a hostile work environment given the *Woods* guidance.

However, unlike *Woods,* this "single utterance" of being called a n-word was not the only evidence of a racially hostile work environment; there are several other relevant incidents. Plaintiff has alleged several instances of racial discrimination that together caused her to suffer from a hostile work environment. Indeed, this Court recently clarified that "a hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Wantou v. Wal-Mart Stores Texas, L.L.C.,* 23 F.4th 422, 433 (5th Cir. 2022) (citing

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 106, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)) (quoting 42 U.S.C. § 2000e-5(e)(1)). However, Defendant continues to improperly scrutinize each discriminatory offence perpetrated against Plaintiff in a vacuum, asking the Court to find that each one separately is irrelevant.

First, Defendant claims that Plaintiff's sworn-to evidence that she was called the n-word, corroborated by Defendant's own internal documents should be "disregarded." (Appellee Brief at p. 18). This argument is absurd. (*See supra,* at p.3-6). Second, Defendant argues that the rest of Plaintiff's allegations of racial discrimination are second-hand harassment and therefore irrelevant to Plaintiff's claims and "not proper summary judgment evidence." (Appellee Brief at p. 16).[5] This argument too is mistaken.

Second-hand evidence is relevant, though it may be considered less objectionable than harassment directed at the plaintiff. *Johnson v. TCB Const. Co., Inc.,* 334 Fed. Appx. 666, 671 (5th Cir. 2009); *Vital v. Nat'l Oilwell Varco,* 2014 WL 4983485 at *33-34 (S.D. Tex. 2014) (analyzing plaintiffs' evidence of second-hand harassment and finding that all of plaintiff's evidence was sufficient to withstand defendant's motion for summary judgment on plaintiff's hostile work environment claim); *Johnson v. PRIDE Industries, Inc.,* 7 F.4th 392, 404 (5th Cir. 2021) (reversing grant of summary judgment by finding that using racial slurs in

plaintiff's presence contributed to a hostile work environment). Thus, "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Wantou* 23 F.4th at 433 (5th Cir. 2022) (internal citations omitted).

Therefore, Plaintiff's evidence before the Court regarding her hostile work environment claim includes the evidence that: she was called a n-word, b-word by a co-worker in front of all non-Black colleagues and her supervisor failed to take immediate action, Plaintiff's co-worker used the n-word all the time, as part of her "vernacular in the office," including previously during a full team meeting, and her supervisor failed to take any action; Plaintiff's co-workers referred to her as "ghetto" and "loud and black;" and after alleged final warnings were given due to the racial hostility towards Plaintiff, Plaintiff was called Aunt Jemima by a co-worker. (ROA.650;ROA.656-658;ROA.777;ROA.828;ROA.890)

### C.    Plaintiff's Theory of Retaliation is Not New

Plaintiff's theory of retaliation has consistently been that Ms. Torres and Ms. Ruiz stopped servicing Plaintiff's accounts, were intentionally sabotaging her employment, and that Plaintiff could not do her job properly without their support. (ROA.686;ROA.832;ROA.887;ROA.888). Plaintiff's response to Defendant's Motion for Summary Judgment detailed Plaintiff's allegation that "[w]ithin days of Plaintiff's complaint to HR, Ms. Boyd reported that Ms. Ruiz and Ms. Torres

retaliated against Plaintiff" and that "Plaintiff corroborates that the CSRs refused to process Plaintiff's orders until her last day of employment with Defendant." (ROA.526-527).

Defendant now claims that Plaintiff is arguing this for the first time on appeal and therefore, the Court should not consider this "new argument." (Appellee's Brief, at p. 31-32). This is disproved by the Record. Plaintiff has consistently throughout this litigation argued that the CSRs, Ms. Boyd and Ms. Torres, retaliated against Plaintiff by failing to service her accounts, and that Ms. Greenway thereafter put Plaintiff on an action plan. (ROA.526-527). The District Court ruled on this very issue, finding that Plaintiff failed to sufficiently allege retaliation, finding that Ms. Torres and Ms. Ruiz were not Defendant's agents. (ROA.1124). Plaintiff has therefore responded to this finding here explaining why that legal conclusion was in error. This is therefore not a new argument. *Peterson v. Linear Controls, Inc.* 757 Fed.Appx.370, 375 (5th Cir. 2019) (stating that arguments are not newly raised on appeal where "when the issues presented to the district court would have permitted the district court to rule on the essential argument advanced on appeal").

Mistakenly confounding what is required for a retaliation claim, Defendant then argues that Defendant's putting Plaintiff on a final action plan, where she understood she was at risk for termination at any time, is not enough to support a retaliation claim. (Appellee's Brief at p. 32). Yet, to establish an "adverse

employment action," all a plaintiff must show is that the defendant's "actions were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405 (2006). The Supreme Court has specifically stated that it rejected the standards "that have treated the anti-retaliation provision and have limited actionable retaliation to so-called 'ultimate employment decisions.'" *Id.* at 67.

The Fifth Circuit has expounded on this by clarifying that "*Burlington Northern* requires us to consider the context of the alleged adverse employment actions, and emphasized that there are all manner of ways employers may retaliate against employees…" *Porter v. Houma Terrebonne Hous. Auth. Bd. Of Com'rs*, 810 F.3d 940, 947 (5th Cir. 2015). A broad range of actions taken by employers are actionable as retaliation. *See e.g., Wheat v. Florida Parish Juvenile Justice Co.,* 811 F.3d 702, 707 (5th Cir. 2016) (finding that assignment of janitorial duties on rehiring constituted an adverse employment action) *Aryain v. Wal - Mart Stores Texas LP,* 534 F.3d 473, 479 - 80 (5th Cir. 2008) (verbally harassing behavior from co - workers); *Holloway v. Dep't of Veterans Affairs,* 309 F.App'x 816, 817 (5th Cir. 2009) (finding that denial of leave of absence and statements from supervisors to co-workers that the employee "was creating problems" was an adverse employment action).

Therefore, Ms. Boyd's and Ms. Torres' sabotage of Plaintiff's accounts, and Ms. Greenway's then putting Plaintiff on a final action plan where she could be terminated at any time, is both actionable retaliation that has been argued throughout these proceedings.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court reverse the District Court's grant of summary judgment and remand to the District Court for further proceedings consistent with this Court's order.

    Respectfully Submitted,

    <u>/s/ Holt M. Lackey</u>
    Holt M. Lackey
    Jennifer Jones Despins
    8310-1 N. Capital of Texas Hwy
    Suite 190
    Austin, Texas 78731
    Phone: (737) 808-2260
    hlackey@equalrights.law

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2022, a true and correct copy of the foregoing Brief for Plaintiff-Appellant were served via electronic filing with the Clerk of Court and all registered ECF users.

Dated: July 26, 2022                              /s/ Holt M. Lackey
                                                  Holt M. Lackey

## CERTIFICATE OF COMPLIANCE

This brief has been prepared using 14-point, proportionately spaced, serif typeface, in Microsoft Word. Excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 2,902 words.

                                  Respectfully Submitted,

                                  /s/ Holt M. Lackey
                                  Holt M. Lackey
                                  Jennifer Jones Despins
                                  8310-1 N. Capital of Texas Hwy
                                  Suite 190
                                  Austin, Texas 78731
                                  Phone: (737) 808-2260
                                  hlackey@equalrights.law